UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIEWIT OFFSHORE SERVICES LTD., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-1299 |
| | § | |
| DRESSER-RAND GLOBAL SERVICES, INC., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff Kiewit Offshore Services, Ltd.'s ("Kiewit") motion for attorneys' fees and costs. Dkt. 77. Having considered the motion, response, and applicable law, the court is of the opinion that Kiewit's motion for attorneys' fees and costs should be GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

This motion for attorneys' fees stems from a business dispute between Kiewit and defendant Dresser-Rand Global Services, Inc. ("Dresser-Rand") for services that Kiewit rendered in engineering, designing, and fabricating two 1220 ton litoral compression modules for Dresser-Rand. Dkts. 1, 62. The contract between the two parties included an estimated "contract price before Change Orders" of approximately $27 million. Dkt. 62; Dkt. 77-1, Ex. A ("Contract"). While working on the project, Kiewit submitted eight invoices to Dresser-Rand. *Id.* Dresser-Rand paid the first four invoices, totaling approximately $33 million. *Id.* However, Dresser-Rand refused to pay the remaining four invoices, totaling approximately $9.5 million. *Id.* Dresser-Rand alleged that Kiewit invoiced Dresser-Rand without submitting a Change Order for "Changes in the Scope of Work" as required under their contract. *Id.*

On May 14, 2015, Kiewit filed this lawsuit against Dresser-Rand, raising claims for breach of contract, promissory estoppel, and unjust enrichment. Dkt. 1. On June 12, 2015, Dresser-Rand filed an answer and a counterclaim for breach of contract. Dkt. 3. The parties filed a series of motions for summary judgment. *See* Dkts. 15–23, 46–47. On September 1, 2016, the court issued its memorandum opinion and order granting Kiewit's five motions for partial summary judgment on Dresser-Rand's counterclaims and Kiewit's claims for payment of invoices. Dkt. 62. The court held that Dresser-Rand was liable for breach of contract for its failure to pay Kiewit $9,572,271.90. *Id.* The court also granted Dresser-Rand's motion for summary judgment in part on Kiewit's claims for Project Impact Damages, promissory estoppel, and unjust enrichment. *Id.* The Project Impact Damages claim is based on allegations that Dresser-Rand failed to timely provide information that Kiewit and its subcontractor needed to design the modules. *Id.* The court held that Kiewit could not recover for these costs, because Kiewit did not follow the procedures outlined in the Contract. *Id.*

On September 21, 2016, Kiewit filed a proposed final judgment seeking $9,527,271.90 for outstanding invoices, interest on the payments, and reasonable attorneys' fees and costs. Dkt. 64. Dresser-Rand objected and sought to delay final judgment until after the court has ruled on its motion for reconsideration (Dkt. 63) and has assessed an award of attorneys' fees. Dkt. 65.

On September 20, 2016, Dresser-Rand filed a motion for reconsideration of the court's summary judgment order. Dkt. 63. In October 2016, the parties filed their respective response and reply, and the court held a hearing on the matter. Dkts. 67, 68, 70. On November 29, 2016, the court issued an order denying Dresser-Rand's motion for reconsideration (Dkt. 63). Dkt. 71. The court also issued an order outlining the briefing schedule for Kiewit's motion on attorneys' fees. Dkt. 72.

On December 12, 2017, Dresser-Rand filed a motion to modify the briefing schedule for attorneys' fees and sought post-judgment discovery. Dkt. 73. On January 3, 2017, Kiewit filed its

response (Dkt. 74), and the next day the court issued its order denying Dresser-Rand's motion to modify the briefing schedule for attorneys' fees and post-judgment discovery. Dkt. 75.

On January 5, 2017, Kiewit filed a motion for attorneys' fees and costs seeking $2,272,399.62. Dkt. 77. On January 26, 2017, Dresser-Rand responded. Dkts. 79, 80. The motion has been fully briefed and is ripe for disposition.

## II. LEGAL STANDARD

Once a court has determined that a plaintiff is entitled to attorneys' fees, then it must determine the amount. *Hopwood v. Texas*, 236 F.3d 256, 277 (5th Cir. 2000). The district court has "broad discretion in determining the amount of a fee award." *Associated Builders & Contractors of La., Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 379 (5th Cir. 1990). Courts use a two-step process to calculate reasonable attorneys' fees. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

First, the court calculates a "lodestar" fee by multiplying the reasonable number of hours spent on the case by the reasonable hourly rates for the participating lawyers. *Id.* Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 801 (5th Cir. 2006) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S. Ct. 1933 (1983)).

Second, the court considers whether the lodestar should be adjusted upward or downward depending on the circumstances of the case, under the twelve *Johnson* factors. *Migis*, 135 F.3d at 1047 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the

3

questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See id.* Texas courts weigh similar factors under Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct to determine reasonable fees. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

The movant seeking attorneys' fees bears the initial burden of submitting adequate documentation of the hours expended and hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933 (1983) ("The applicant should exercise 'billing judgment' with respect to hours worked . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.").

### III. ANALYSIS

Kiewit contends that because it is the prevailing party in this case, it is entitled to attorneys' fees. Dkt. 77 (citing Dkt. 71). Although Kiewit did not prevail on its Project Impact Claim seeking approximately $7 million in damages, the court granted summary judgment in favor of Kiewit on its breach of contract claims for approximately $9.5 million in unpaid invoices and dismissed all of Dresser-Rand's counterclaims. Dkt. 62.

"State law controls both the award of and the reasonableness of attorneys' fees awarded where state law supplies rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). The court finds that an award of attorneys' fees is warranted based on the Contract between the parties. *See* Dkt. 77, Ex. A (Contract, Art. 913) ("[I]f suit is brought . . . then the prevailing Party

shall be entitled to recover reasonable attorneys' fees and costs from the other Party."). Here, Kiewit's breach of contract claim was governed by Texas law, and Kiewit is entitled to fees incurred in successfully litigating its breach of contract claim. *See* Tex. R. Civ. Pro. § 38.001.

The first step in determining an award of attorneys' fees is to calculate the lodestar by multiplying the reasonable number of hours spent on the case by the reasonable hourly rates for the participating lawyers. *Migis*, 135 F.3d at 1047. Kiewit incurred $2,239,321.75 in attorneys' fees and $216,442.20 in costs. Dkt. 77 at 22; Dkt. 77-4, Ex. B-2. After voluntarily reducing its fees and costs by 15% to account for the segregation of fees and a billing judgment deduction in costs, Kiewit seeks $1,903,423.75 in attorneys' fees; $183,975.90 in costs; $35,000 in post-judgment fees for the additional time incurred responding to Dresser-Rand's motion to modify the court's attorneys' fees briefing schedule; and $150,000 in conditional appellate fees. Dkt. 77 at 22. In total, Kiewit seeks $2,272,399.62 in attorneys' fees and costs. *Id.*

Dresser-Rand does not dispute the rates charged by Kiewit's counsel, but objects to the excessive amount of time Kiewit's counsel spent on each task. Dkt. 79. Specifically, Dresser-Rand asserts that the fees should be reduced because Kiewit's attorneys: (1) failed to exercise good billing judgment, (2) billed for paralegal clerical work which is not recoverable, (3) reduced the total fee for hours worked on its unsuccessful claims by 15% instead of by 30%, (4) did not substantiate the $35,000 requested in post-judgment fees, and (5) did not substantiate the $150,000 requested in conditional appellate fees. Dkt. 79.

### A.     Reasonable Hourly Rate

A reasonable rate for an award of attorneys' fees is the "prevailing market rates in relevant community" for attorneys of comparable experience employed in cases of similar complexity. *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984). Kiewit's fees are based on average hourly rates for

5

partners ($353–$402 per hour), associates ($241–$242 per hour), and paralegals ($150–$160). Dkt. 77-2 (Fogler expert report); Dkt. 77-4, Ex. B-2 (fee summary chart). Kiewit's expert witness on attorneys' fees, Murray Fogler, attests that these hourly rates are customarily charged in Houston for similar legal services and are on the "low side." Dkt. 77-2 at 8. Dresser-Rand does not dispute the rates. The court finds the rates charged are reasonable given the level of complexity of the case.

### B. Reasonable Hours Expended

*1. Segregation of Successful and Unsuccessful Claims*

Under Texas law, "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006) (holding attorneys did not have to keep separate time records for drafting each cause of action in the petition, but could opine on the percentage of the drafting time used on the claims that were successful).

Here, Kiewit prevailed at summary judgment based on its breach of contract claim. Dkt. 62. Kiewit acknowledges that it was unsuccessful under its theory of the Project Impact Claim and voluntarily reduced its fees by 15%. Dkt. 77. Kiewit asserts that during the course of the litigation, its expert witness Alan Nirenberg prepared an expert report in which only seven out of 64 pages of the report (11%) discussed the Project Impact Claim. Dkt. 77 at 11. Kiewit's expert witness Murray Fogler opines that the facts of the breach of contract claim on invoices are intertwined with the unsuccessful Project Impact Claim and therefore a 15% fee reduction ($335,898.00) is appropriate to segregate the fees. Dkt. 77, Ex. B at 9–10 (Fogler Dec.). Fogler bases this percentage on his "review of the case materials, my conversations with the Bland lawyers, and my experience with these types of cases." *Id*.

Dresser-Rand counters that a 15% reduction is not enough because Kiewit cannot recover fees for the hours expended on the Project Impact Claim or for the non-equitable causes of action of promissory estoppel and unjust enrichment. Dkt. 79. Dresser-Rand's expert witness Laura Gibson argues a reduction in fees is appropriate notwithstanding the fact that the facts and legal work for the recoverable and non-recoverable claims were intertwined. Dkt. 79-1 at 10 (Gibson Dec.); Dkt. 79 at 20 (citing *Peak Tech. Servs., Inc. v. Land & Sea Eng'g, LLC*, CIV.A. H-10-1568, 2012 WL 3234203, at *6 (S.D. Tex. Aug. 6, 2012) (Rosenthal, J.) ("[A] reduction in attorneys' fees is nonetheless appropriate because without a reduction, the fee amount sought is unreasonably large.")). Gibson opines that Fogler's 15% reduction is both low and arbitrary and instead suggests a 30% reduction in fees. Dkt. 79 at 21.

Upon review of the invoices and the filings related to Kiewit's unsuccessful claims, the court finds that segregation of the fees is necessary. A fee reduction is warranted to segregate Kiewit's breach of contract claim under its successful legal theory from its unsuccessful legal theories and non-equitable claims. "Intertwined facts do not make tort [attorney's] fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Chapa*, 212 S.W.3d at 313–14. The court agrees with Kiewit that a 15% reduction is appropriate to segregate the fees incurred on its unrecoverable claims.

  *2. Paralegal Fees*

Kiewit requests $144,749.50 for work performed by three paralegals. Dkt. 77-4, Ex. B-2. Dresser-Rand argues that Kiewit's paralegal fees are not recoverable because the paralegals provided clerical work. *See* Dkt. 79, Exs. I, J. Further, Dresser-Rand argues that Kiewit has not met its burden in proving that it is entitled to paralegal fees. *Id.* Under Texas law, legal assistant fees are

7

a component of attorneys' fees and courts must consider a four-step test to assess whether a legal assistant's fees are recoverable.

> A party may separately assess and include in the award of attorneys' fees compensation for a legal assistant's work, if that assistant performs work traditionally done by an attorney. In order to recover such amounts, the evidence must establish: (1) the qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant.

*Multi-Moto Corp. v. ITT Commercial Fin. Corp.*, 806 S.W.2d 560, 570 (Tex. App.—Dallas 1990, writ denied) (citing *Gill Sav. Ass'n v. Int'l Supply Co., Inc.*, 759 S.W.2d 697, 702–04 (Tex. App.—Dallas 1988, writ denied) (collecting cases).

The court finds that Kiewit did not establish all the elements necessary to recover paralegal fees. While Kiewit listed the paralegal's hourly rate ($150–$160) and total hours of work performed, Kiewit did not establish the qualifications of the paralegals or describe the substantive legal work that they performed under the direction of an attorney. Dkt. 77 at 17; Ex. B-2. The court agrees with Dresser-Rand that absent this evidence, Kiewit cannot recover for time billed by paralegals. *Gill*, 759 S.W.2d at 705 ("[W]e hold that the evidence concerning the work performed by the legal assistants is legally insufficient to support the award."). Thus, the court will deduct $144,749.50 for the services that Kiewit's paralegals billed from the amount of attorneys' fees.

    3.    *Billing Judgment*

Kiewit presents invoices from November 2013 to November 2016 specifying the time-keeper, date, hours expended, total fee for each entry, and billed approximately 7,804 hours. Dkt. 77 at 17, Ex. C-1. Dresser-Rand argues that Kiewit failed to prove sufficient billing judgment and that the hours expended were unnecessary and not reasonable. Dkt. 79.

"[P]laintiffs seeking attorney fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing

judgment." *Saizan*, 448 F.3d at 799. The Court must review billing records and exclude all time that is excessive, duplicative, or inadequately documented. *Hensley*, 461 U.S. at 433. "The hours surviving this vetting process are those reasonably expended on the litigation." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799. "The proper remedy for omitting evidence of billing judgment . . . does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Id.*

### a) Block Billing

Dresser-Rand alleges that Kiewit's block billing entries made it difficult to assess the amount of time dedicated to each task, such as travel or preparing for a deposition. Dkt. 79. Dresser-Rand challenges several entries as too vague to determine whether or how much time was spent on discrete tasks. *Id.* For example, the February 22, 2016 time entry for partner David Bland shows he billed nine hours for traveling to Boston, preparing for and attending a deposition, attending attorney conferences, and preparing correspondence. Dkt. 79-1, Ex. F (Bland & Partners Invoice No. 12316). Upon review of Kiewit's invoices, the court finds that the majority of the billing entries do not specify the amount of time spent on discrete tasks. *See* Dkt. 77, Ex. C. Starting in August 2016, Kiewit began itemizing the amount of time performed on particular tasks, but this was only done for four of the thirty-five months. Dkt. 79-1 at 7 (Gibson Dec.); Dkt. 77, Ex. C.

"When time records are block billed, the court cannot accurately determine the number of hours spent on any particular task, and the court is thus hindered in determining whether the hours billed are reasonable." *Barrow v. Greenville Indep. Sch. Dist.*, 3:00-CV-0913-D, 2005 WL 6789456, at *4 (N.D. Tex. Dec. 20, 2005) (collecting cases), *aff'd*, 06-10123, 2007 WL 3085028 (5th Cir. Oct.

9

23, 2007). Kiewit has not identified how many hours were "written off as unproductive, excessive, or redundant" as required to establish good billing judgment. *Saizan*, 448 F.3d at 799. The court finds this weighs in favor of a reduction of the award of attorneys' fees and will take this into account in its overall billing judgment deduction.

### b) Overstated Time Charges

Dresser-Rand also argues that Kiewit's counsel overstated time charges on drafting an eight-page complaint, preparing for mediation, and taking depositions. Dkt. 79 at 5–10. Dresser-Rand compares the 54 hours it took for Kiewit to prepare and draft the complaint with the 2.5 hours it took to draft an eight-page answer and counterclaim, motion for *pro hac vice*, and corporate disclosures. Dkt. 79 at 6. Because of the complexity of the facts and issues in the case, the court is not persuaded that Dresser-Rand's comparison of Kiewit's complaint to Dresser-Rand's non-dispositive filings is an accurate comparison. Further, Dresser-Rand was not successful on any one of its three counterclaims.

Dresser-Rand also objects to the 4.2 hours that partner Brian Comarda spent on mediation. Dkt. 79 at 6. Kiewit presents evidence that its attorneys researched potential mediators, prepared a mediator's memorandum, drafted a PowerPoint presentation, and met with executives about the mediation. Dkt. 77 at 7. The court finds that these hours are reasonable.

Nevertheless, upon examining the invoices, the court finds some discrepancies in Kiewit's billing entries. Dresser-Rand identified specific instances where Kiewit attorneys billed more hours than Dresser-Rand attorneys for the same task. *Id.* This included the October 4, 2016 conference call with the court where Kiewit's attorneys each billed 1.5 and 0.90 hours while Dresser-Rand's counsel billed 0.30 hours for a conference call that lasted 0.25 hours (i.e. 15 minutes). *Compare* Dkt. 77, Ex. C-1 (Bland & Partners Invoice No. 13277) ("Prepare for and attended court proceeding

10

regarding motions for reconsideration and attorneys fees") *with* Dkt. 80, Ex. 2-E at 190 (Porter Hedges LLP Invoice No. 458985) ("Participate in conference call with court").

On several occasions, Kiewit's counsel billed more hours on a deposition than the time it took to conduct the deposition. Dkt. 79-1 at 9. For example, on November 9, 2015, Associate Jack Byrom billed 10.2 hours for attending a deposition that lasted 7.8 hours and listed no other description of services performed. *Compare* Dkt. 77, Ex. C (Bland & Partners Invoice No. 12022) *with* Dkt. 79-2 (Rosenberg Dec.), Ex. 2-B. The court notes that the number of hours Kiewit's counsel billed on a deposition may include the hours required to prepare for the deposition and thus are longer than the duration of the deposition itself. Nevertheless, Dresser-Rand points out that the number of hours that Kiewit's counsel billed per deposition is longer than the number of hours Dresser-Rand's counsel billed for preparing for and attending the same deposition. *See* Dkt 79-2 at 8, Ex. 2-B. The court finds this weighs in favor of a reduction of the award of attorneys' fees. Rather than seeking out every overstated time entry and reducing the time, the court's overall deduction for billing judgment will take these discrepancies into account.

### c) Attorney Conferences

Dresser-Rand argues that the court should not count the time for excessive attorney conferences and discussions. Dkt. 79 at 10. Dresser-Rand identified 681 different time entries that included attorney conferences and notes that it is not able to quantify the number of hours devoted to attorney conferences due to block billing. *Id.* The court has reviewed the invoices and finds that most of the entries are spaced out enough that they seem to be reasonable in light of the complexity of the issues being considered. The court finds that these hours are reasonable.

#### d) Duplication of Efforts and Overstaffing

Kiewit employed nine attorneys from the Bland & Partners during the course of the litigation. Dkt. 79 at 11. Dresser-Rand argues that five of the nine lawyers billed more than 1,000 hours on the matter compared to Dresser-Rand's eight attorneys in which each attorney billed under 660 hours. *Id.* Dresser-Rand also objects to Fogler's expert report in which he justified the multiple attorneys on the case because the "deposition schedule was compressed on a fast-track." Dkt. 79 at 12 (citing Dkt. 77-4 (Fogler Dec.)). Fogler cites that the August 31, 2015 scheduling order set the discovery deadline on December 31, 2015. Dkt.77-4 (Fogler Dec.). Dresser-Rand contends it had a gentleman's agreement with Kiewit to extend discovery and that after the court's deadline, the last of six depositions occurred on June 8, 2016. *Id.*

In turn, Kiewit explains that it employed multiple attorneys to simultaneously conduct discovery (including reviewing over 370,000 documents in a four-month window), take and defend twenty-four depositions, and draft five summary judgment motions. Dkt. 77. Kiewit also contends that Dresser-Rand needlessly increased attorneys' fees and costs when it spent time drafting a reply and preparing a hearing on two counterclaims that Dresser-Rand later conceded. *Id.* at 13–14.

The court does not believe that the time Kiewit's counsel spent reviewing discovery evidence, preparing for hearings, and drafting multiple motions in response to Dresser-Rand's counterclaims was necessarily unreasonable and therefore will allow the hours billed on this.

#### e) Attorneys Performing Clerical Work

Next, Dresser-Rand objects to four time entries in which associate Suzanne Brangan billed for non-attorney work such as conferring with a colleague about file organization, uploading received files, and conferring with a vendor on a quote. Dkt. 79 at 13. "Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Johnson*, 488 F.2d at

717. Here, the billing records show that Brangan billed her non-legal work at the attorney rate of $240/hour. However, because of block billing, the court cannot discern the exact number of hours that Brangan billed for non-attorney work. Dkt. 77-5 (Invoice Nos. 11251, 11870). Accordingly, the court finds this weighs in favor of a reduction of the award of attorneys' fees and its overall deduction for billing judgment will take this into account.

### f) Non-Working Travel Time

Dresser-Rand next asserts that Kiewit's fee request includes unproductive travel time by its attorneys and that those hours should be reduced by 25% even though common practice in the Fifth Circuit is to reduce the billing rate for non-working travel time by 50%. Dkt. 79 at 13. *In re Babcock & Wilcox Co.*, 526 F.3d 824, 827 (5th Cir. 2008); *Preston Expl. Co., LP v. GSP, LLC*, CIV.A. H-08-3341, 2013 WL 3229678, at *7 (S.D. Tex. June 25, 2013) (Miller, J.); *Lewallen v. City of Beaumont*, CIV.A. 1:05-CV-733TH, 2009 WL 2175637, at *10 (E.D. Tex. July 20, 2009), *aff'd*, 394 Fed. Appx. 38 (5th Cir. 2010). With regard to travel, Kiewit alleges that Dresser-Rand's insistence on deposing a third-party in Mexico who never showed up for the deposition forced Kiewit to incur fees for no reason. Dkt. 77 at 14. Dresser-Rand identified 216.40 hours of travel in the amount of $84,887.50 and asserts that because of block billing, there is no indication of how much of that time was devoted to travel as opposed to other tasks in the time entry. Dkt. 79 at 14, n.4; Dkt. 79, Ex. 1 (Gibson Dec.). The court finds that this weighs in favor of a reduction of the award of attorneys' fees and its overall deduction for billing judgment will take this into account.

### g) Billing Judgment Deduction

The court agrees with Dresser-Rand and finds that a reduction of hours is warranted due to block billing in the majority of Kiewit's invoices. Dkt. 77. "When time records are block billed, the court cannot accurately determine the number of hours spent on any particular task, and the court

13

is thus hindered in determining whether the hours billed are reasonable." *Barrow v. Greenville Indep. Sch. Dist.*, 3:00-CV-0913-D, 2005 WL 6789456, at *4 (N.D. Tex. Dec. 20, 2005) (collecting cases), *aff'd*, 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007). Kiewit has not identified how many hours were "written off as unproductive, excessive, or redundant" as required to establish good billing judgment. *Saizan*, 448 F.3d at 799. After a careful analysis of the record and invoices, and in the exercise of the court's discretion, the court finds a 20% reduction is an appropriate reduction due to the inadequate documentation of the hours and fees requested, block billing, overstated time charges, attorneys performing non-legal work, and non-working travel time.

### E. Adjusting Lodestar Amount

Once the court has determined the lodestar, it may accept the lodestar or adjust it up or down. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.1995). The lodestar amount is presumed to be a reasonable fee and should be modified only in exceptional cases. *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638 (1992). "[A] party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." *Kellstrom*, 50 F.3d at 329 (quoting *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413 (2d Cir. 1989)).

Neither party has advocated for an adjustment of the lodestar amount. *See* Dkts. 77, 79. Dresser-Rand's objections are targeted toward the reduction of discrete fees and the number of hours expended in the litigation. Therefore, no adjustments to the lodestar are appropriate.

### F. Post-Judgment Fees

Kiewit seeks $35,000 for work performed between November 2016 and January 2017, for which the invoices were not yet prepared when Kiewit filed the motion for attorneys' fees on January 5, 2017. Dkt. 77. Dresser-Rand argues that Kiewit is not entitled to recover post-judgment fees

14

because Kiewit has neither produced contemporaneous time records for work during this period, nor has Kiewit presented adequate evidence to determine the reasonable hours of work performed. Dkt. 79 at 22. Dresser-Rand argues that Fogler's opinion in the expert report that $35,000 is appropriate is not evidence. *Id.* The court agrees. As the movant seeking attorneys' fees, Kiewit "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

On January 3, 2017, Kiewit filed a four-page response to Dresser-Rand's motion to modify the briefing schedule on attorneys' fees (Dkt. 73). Dkt. 74. In its motion for attorneys's fees, Kiewit submitted invoices up to Dec. 8, 2016. Dkt. 77-4, Exs. B-2, C-1 (sealed monthly invoices). As of the date of this opinion, Kiewit has not filed any supplement to its motion for attorneys' fees. Fogler's expert report also lacks any reasoning behind the estimate of $35,000 in fees and does not identify what tasks were completed, who performed them, or an estimate of the number of hours. *See* Dkt. 77-2. The court finds that Kiewit did not present sufficient evidence or records to show that it is entitled to $35,000 for the work that was completed from November 2016 to January 2017. *See Kellstrom*, 50 F.3d at 325 ("Failing to provide contemporaneous billing statements does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours."). Accordingly, Kiewit's motion for post-judgment fees in the amount of $35,000 is DENIED.

### G. Conditional Appellate Fees

Kiewit seeks $150,000 in appellate fees should the case go on appeal. Dkt. 77. An award of attorneys' fees may include conditional fees for an appeal. *Solomon v. Steitler*, 312 S.W.3d 46, 59 (Tex. App.—Texarkana 2010, no pet.); *Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st Dist.], 2006, no pet.). As with fees awarded for work during a trial, "there must be evidence of the reasonableness of fees for appellate work to support the award of appellate attorney's fees."

*Keith*, 221 S.W.3d at 169; *Siegler v. Williams*, 658 S.W.2d 236, 241 (Tex. App.—Houston [1st Dist.] 1983, no writ).

Without describing the basis for the amount, Fogler opines that a "reasonable fee" for a case like this would be $150,000. Dkt. 77-2 at 12. While Fogler describes the basic tasks of the appellate process including "legal research and drafting of an appellate brief, and preparation for and giving of an oral argument," he does not specify an expected number of hours, who would be performing the tasks, or otherwise substantiate the amount requested. *Id.*; *see Amlin Corp. Member, Ltd. v. Logistics Group Intern., Inc.*, CIV.A. H-09-2695, 2011 WL 3271335, at *10 (S.D. Tex. July 28, 2011) (Rosenthal, J.) (denying without prejudice attorneys' fees for an appeal because affidavit lacked basis for amount requested); *see also Fid. & Deposit Co. of Md. v. Rodriguez*, CIV A 3:09-CV-76-KC, 2009 WL 2382979, at *5 (W.D. Tex. June 10, 2009) (denying without prejudice attorneys' fees for plaintiff to refile motion "after the fees have, in fact, been incurred"). Accordingly, Kiewit's request for conditional appellate fees is DENIED WITHOUT PREJUDICE to allow Kiewit to re-file such motion if Kiewit succeeds on appeal.

**H.    Costs**

As a business judgment decision, Kiewit voluntarily reduced its original cost request by 15% from $216,442.20 to $183,975.90.[1] Dkt. 77 at 19–20. Dresser-Rand did not respond to this portion of Kiewit's motion for attorneys's fees and costs. Under Southern District of Texas Local Rule 7.4,

---

[1] Kiewit filed two different estimates of costs. *Compare* Dkt. 77 at 4, 20, 22 ($216,442.20) *with* Dkt.77-4, Ex. B-2 ($222,303.78). Because Kiewit's motion mentioned the $216,442.20 estimate several times, the court will use this estimate in its calculation and will assume the $222,303.78 estimate was made in error. The court further notes that Kiewit rounded up to the nearest ten-cent interval in its estimate of costs. A 15% deduction of $216,442.20 is actually $183,975.87. The court finds this three-cent discrepancy negligible.

the court deems the request unopposed. Kiewit's request for costs in the amount of $183,975.90 is GRANTED.

### IV. Conclusion

Kiewit's motion for attorneys' fees and costs (Dkt. 77) is GRANTED IN PART and DENIED IN PART. Kiewit incurred $2,239,321.75 in attorneys' fees. The court first deducts $144,749.50 from the total because Kiewit did not provide sufficient evidence to recover paralegal fees ($2,239,321.75 – $144,749.50 = $2,094,572.25). Next, the court reduces the attorneys' fees by 15% to segregate the amount of work that Kiewit spent on unrecoverable claims ($2,094,572.25*(1–0.15) = $1,780,386.41). Then, the court reduces the fees by 20% to account for a billing judgment deduction ($1,780,386.41*(1–.20) = $1,424,309.13). The lodestar is $1,424,309.13 and no adjustment to the lodestar is warranted. Accordingly, Kiewit's motion for attorneys' fees in the amount of $1,424,309.13 is GRANTED.

Kiewit's motion for costs in the amount of $183,975.90 is GRANTED. Kiewit's request for post-judgment fees is DENIED. Finally, Kiewit's request for conditional appellate fees is DENIED WITHOUT PREJUDICE.

As modified, the court hereby AWARDS the following attorneys' fees and costs to Kiewit:

| Original Fee Request | $2,239,321.75 |
|---|---|
| **Paralegal Fees Deduction** | ($144,749.50) |
| **Segregation Fees Deduction** | 15% |
| **Billing Judgment Deduction** | 20% |
| **Lodestar** | **$1,424,309.13** |
| | |
| **Post-Judgment Fees** | DENIED |
| **Conditional appellate Fees** | DENIED WITHOUT PREJUDICE |
| | |
| **Original Costs Request** | $216,442.20 |
| **Billing Judgment Deduction** | 15% |
| **Costs** | **$183,975.90** |
| | |
| **Total Award (Attorneys' Fees & Costs)** | **$1,608,285.03** |

Signed at Houston, Texas on June 15, 2017.

_____
Gray H. Miller
United States District Judge